IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
Atlanta Division

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | FILE NO. 1:19-CV-03158-AT |
| DELTA AIR LINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

COMES NOW Delta Air Lines, Inc., incorrectly named as "Delta Airlines, Inc." in the above-styled civil action, and pursuant to Fed. R. Civ. P. 56, and Local Rule 56, files this brief in support of its motion for summary judgment, showing the Court as follows:

## I.    STATEMENT OF FACTS

Plaintiff filed the subject complaint against defendant asserting claims for personal injuries allegedly suffered during an international Delta flight from London, United Kingdom to Atlanta, Georgia. (Docket Entry No. 1, ¶ 7). Plaintiff alleges that a few hours after he was served food by the flight crew that he began to suffer illness including diarrhea and vomiting. (Docket Entry No. 1, ¶ 9). Plaintiff

also alleges that after landing, he was escorted out of the Atlanta Hartsfield-Jackson airport without his checked baggage. (Docket Entry No. 1, ¶ 9). Plaintiff alleges that as a result of his illness, he was unable to timely arrive at his final destination in Miami, Florida and lost out on business. (Docket Entry No. 1, ¶ 10). Plaintiff alleges that after his checked baggage was returned to him, it was missing six-months of anti-retroviral medication. (Docket Entry No. 1, ¶ 11).

It is undisputed that the flight at issue was an international flight. Plaintiff was flying from London, United Kingdom to Atlanta, Georgia with a subsequent connecting flight to Miami, Florida. (Plaintiff's Response to Defendant's First Interrogatories, Interrogatory Response No. 9). Plaintiff testified that he checked a baggage containing six-months' worth of anti-retroviral medication on the flight. (Deposition of John Doe p. 89, l. 18). Plaintiff testified that he intended to check this baggage.  (Doe Depo. p. 89, l. 18).  Plaintiff testified that he had a carry-on bag with him containing a five or six days' supply of the anti-retroviral medication. (Doe Depo. p. 94 l. 1). Plaintiff testified that upon being seated on the plane, he took a nap.  (Doe Depo., p. 100, l. 3). Plaintiff testified that prior to sleeping, he told the flight attendant to wake him for the meal, because he wanted to eat. (Doe Depo., p. 100, l. 22).  Plaintiff testified that he woke when the meal arrived and took his anti-retroviral medication along with a drink of cran-apple drink. (Doe

Depo., p. 101, l. 6). Plaintiff further testified that there were several meal options, but that he chose the chicken meal. (Doe Depo., p. 102, l. 8). Plaintiff testified that he did not recall anything unusual about the meal. (Doe Depo., p. 102, l. 8). Plaintiff then went back to sleep. (Doe Depo., p. 104, l. 11). Plaintiff woke sometime later on the flight with the need to defecate. (Doe Depo., p. 104, l. 23). Plaintiff was not feeling sick at this time but went to the bathroom and had a normal bowel movement. (Doe Depo., p. 105, l. 18). Plaintiff then returned to his seat and slept. (Doe Depo., p. 106, l. 3) Plaintiff woke again and began to suffer a case of vomiting and chills for the remainder of the flight. (Doe Depo., p. 106, l. 3) Upon landing in Atlanta, the Delta flight crew offered plaintiff an E-unit. (Doe Depo., p. 114, l. 15). Plaintiff did not understand what an E-unit was and so he declined it. (Doe Depo., p. 115, l. 1). Plaintiff did not get his checked baggage from customs before leaving the airport. (Doe Depo., p. 120, l. 1). Plaintiff testified that he asked what he should do about his baggage and was told that he should call after he got to the hospital. (Doe Depo., p. 120, l. 1). Plaintiff received medical care the following day after the flight Piedmont Urgent Care at Wellstreet in Dunwoody, Georgia. (Doe Depo., p. 120, l. 1).  There the doctor diagnosed him with gastroenteritis. (Doe Depo., p. 122, l. 4).

Plaintiff testified that he did not receive baggage for a couple of days. (Doe Depo. p. 123, l. 7).  Plaintiff further testified that when his baggage did arrive, it was missing anti-retroviral medication which he had packed. (Doe Depo. p. 94, l.23, p. 128, l. 20).  Plaintiff testified that this caused him to go without his anti-retroviral medication but was unable to give an exact amount of time in which he went without the medication. (Doe Depo. p. 148, l.8). [1]

Plaintiff's HIV is currently stable and his viral loads are undetectable. (Doe Depo. p. 177 l. 23 – l. 25).

Plaintiff asserts three claims against defendant: (1) strict liability under Article 17(1) of the Montreal Convention; (2) a state law negligence claim; and (3) a state law breach of contract claim. (Docket Entry No. 1 ¶¶ 13, 17, 23).  As set

---

[1] Plaintiff's testimony regarding the length of time he went without medication is full of contradictions.  In Plaintiff's response to defendant's first interrogatories, plaintiff response suggests he was without medication for a period between two weeks and a few months.  (Plaintiff's response to defendant's first interrogatory, Response No. 9). In an email to his primary care doctor on September 5, 2017, plaintiff wrote that, "my luggage was lost by the airlines so for nearly a week I was without medication." (Plaintiff's Response to Defendant's First Interrogatories and Request for Production of Documents, being filed contemporaneously herewith). Plaintiff does not dispute that he wrote this email. (Doe Depo., p. 148, l. 3).  When a party witness has given contradictory testimony, that testimony is construed against the party witness at summary judgment.  Sherman v. Dollar Tree Stores, Inc., 2020 WL 6292823, *6 (N.D.Ga. 2020) (citing Prophecy Corp. v. Charles Rossignol, Inc., 256 Ga. 27, 30 (1986)).  The burden is on the party giving the contradictory testimony to offer a reasonable explanation.  Id.  Whether a reasonable explanation has been provided is a question of law. Id.

forth below, plaintiff's state law claims under Counts II and III of his complaint are preempted by the Montreal Convention, and accordingly should be dismissed with prejudice.    Further,  plaintiff's  claim  under  Article  17(1)  of  the  Montreal Convention fail to establish the necessary elements for recovery under Article 17(1) of the Convention.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party establishes that there is no genuine issue of material fact for trial, construing all reasonable inferences in favor of the party opposing the motion, and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." Miccosukee Tribe of Indians of Fla. v. United States, 516 F.3d 1235, 1243 (11th Cir. 2008). A fact is material if it "might affect the outcome of the suit under the governing law." Id.

Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.  To meet this burden, the non-moving party may not rest upon the mere allegations in the pleadings; instead, the non-moving party must set forth "specific facts."  Fed. R. Civ. P. 56(e); Valdivieso v. Atlas Air, Inc., 305 F.3d

1283, 1284 (11th Cir. 2002); <u>Rice-Lamar v. City of Fort Lauderdale, Florida</u>, 232 F.3d 836, 840 (11th Cir. 2000). "If the non-moving party fails to 'make a sufficient showing on an essential element of its case with respect to which it has the burden of proof,' then the court must enter summary judgment for the moving party." <u>Rice-Lamar</u>, 232 F.3d at 840.

## III.   ARGUMENT AND CITATION OF AUTHORITY

### a.   <u>Plaintiff's State Law Claims are Preempted by the Montreal Convention.</u>

Plaintiff's state law claims against defendant for injuries suffered during an international flight fall squarely into the type of claims preempted by the Montreal Convention. As a result, they must be dismissed.

Any incident for which an action for damages could be brought under the Montreal Convention preempts state law claims for the same, even where recovery is not ultimately possible under the provisions of the Convention. <u>See</u> Convention for International Carriage by Air Done at 28 May 1999, S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000) (hereinafter, "Montreal Convention"), Art. 29. ("[A]ny action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention…").

The Montreal Convention, entered into force on November 4, 2003, is the successor to the Warsaw Convention of 1929, and courts interpreting the Montreal Convention may rely on authority addressing similar provisions of the Warsaw Convention. See, Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1177 (11th Cir. 2014).  Both the United States and the United Kingdom are signatories to the Montreal Convention. See Montreal Convention.

It is well established that the Montreal Convention "is the exclusive mechanism of recovery for personal injuries suffered on board an aircraft or in the course of embarking or disembarking from an airplane." Marotte v. Am. Airlines, Inc., 296 F.3d 1255, 1259 (11th Cir. 2002). The preemptive effect of the Convention "extends to all causes of action for injuries to persons or baggage suffered in the course of international airline transportation, regardless of whether a claim actually could be maintained under the provisions of the Convention." King v. Am. Airlines, Inc., 284 F.3d 352, 357 (2nd Cir. 2002); see also Dogbe v. Delta Air Lines, Inc., 969 F.Supp.2d 261 (E.D. N.Y. 2013) ("Thus, by its own terms, the [Montreal] treaty, where applicable, preempts the remedies of a signatory's domestic law, whether or not the application of the Convention will result in recovery in a particular case.").

Generally, when determining whether a state law claim is preempted under Article 17 of the Montreal Convention, courts employ a totality of the circumstances approach. Marotte, 296 F.3d at 1260 (discussing the similar provision in the Warsaw Convention). In making this determination, the court should assess three factors: (1) the passenger's activity at the time of the accident; (2) the passenger's whereabouts at the time of the accident; and (3) the amount of control exercised by the carrier at the moment of the injury. No single factor is dispositive, rather the three factors form a "'single unitary [analytical] base'" Id. (quoting McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315–16 (1st Cir.1995)).

Both plaintiff's state law negligence claim and state law breach of contract claim are preempted for the same reasons: it is undisputed that plaintiff's alleged injuries in both claims occurred entirely during the course of an international flight; plaintiff's own pleadings and deposition make this clear.  Plaintiff's claim under the Montreal Convention clearly states that "the incident which caused the injuries described above… **took place** on board Delta's aircraft **during an international flight**." (Docket Entry No. 1, ¶ 13, emphasis added).  Neither of plaintiff's state law claims add any additional allegations or injuries, instead incorporating by reference the identical allegations and injuries they used in

support of their Montreal Convention claims. (Docket Entry No. 1, ¶ 14, 18). Plaintiff cannot claim recovery under the Montreal Convention using a set of allegations, and then turn around and claim different recovery under state law using the same set of allegations. The state law claims must be preempted. See Bloom v. Alaska Airlines, 36 Fed. Appx. 278, 281 (9th Cir. 2002)("[Plaintiff]'s pleadings and statements at oral argument make abundantly clear that his contract and fraud actions are indistinct from his claims for emotional distress because all arose from the same discrete event during embarkment. Therefore, these causes of action are preempted by the Warsaw Convention.").

Further, plaintiff's claim of breach of contract alleges that the contract which defendant allegedly breached was that defendant would conduct "each flight segment" in a safe and proper fashion and that Delta personnel would be properly trained in operating equipment "aboard the aircraft" in a safe manner. (Docket Entry No. 1, ¶ 10).   By its own terms, the breach plaintiff alleges had to have occurred during the flight segment and aboard the aircraft and is therefore preempted by the Montreal Convention.

Counts II and III of plaintiff's complaint, brought as state law claims, are both clearly preempted by the Montreal Convention.

**b.**   **Plaintiff's Count I Montreal Convention Claims Fail to State a Valid Claim Under Article 17(1).**

Plaintiff brings claims under Montreal Convention, Article 17(1), claiming that Delta is liable for damages "which caused the injuries above" because they were caused by actions which constitute an "accident" as provided by the Montreal Convention. (Docket Entry No. 1, ¶ 13).   Plaintiff's alleged injury claims are threefold: (1) plaintiff claims he suffered a case of food poisoning as a result of an in-flight meal provided by defendant; (2) plaintiff claims he suffered injury as a result of lost medication; and (3) plaintiff claims he suffered business loss as a result of being unable to complete his journey to Miami.  (Docket Entry No. 1, ¶ 9, 10, 11).

Article 17(1) of the Montreal Convention provides: "The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention, Art. 17(1).

Thus, to state a claim under Article 17(1) of the Convention, a plaintiff must show that: (1) an "accident" occurred; (2) bodily injury or death occurred; and (3) the preceding two conditions occurred either during an international flight or while embarking or disembarking from one. Marotte v. Am. Airlines, Inc., 296 F.3d

1255, 1259 (11th Cir. 2002). When the injury or death has been caused by a passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an "accident." Air France v. Saks, 470 U.S. 392, 405 (1985).  Mental injuries are recoverable under Article 17, "only to the extent that they have been caused by bodily injuries." Ehrlich v. Am. Airlines, Inc., 360 F.3d 366, 400 (2d Cir. 2004).

> **i.    *Plaintiff's claim of food poisoning is not an accident under the Montreal Convention and fails to establish causation sufficient to survive summary judgment.***

Plaintiff's first alleged injury under the Count I of his complaint is his alleged food poisoning. (Docket Entry No. 1, ¶ 9). Plaintiff alleges that as a result of food he was served on his flight from London to Atlanta, that he suffered food poisoning. (Docket Entry No. 1, ¶ 9). Plaintiff's claim is subject to summary judgment because plaintiff has provided no medical expert evidence of causation or any evidence whatsoever of causation.

Although causation is an issue left to a jury, medical causation falls beyond the scope of a layperson's knowledge and requires competent medical testimony. See, Wingster v. Head, 318 F. Appx. 809, 814 (11th Cir. 2009). Summary judgment is appropriate when a plaintiff has failed to provide medical expert

evidence of the causation element of his case. Jacob v. Korean Air Lines Co., Ltd., 606 Fed. Appx. 478 (11th Cir. 2015).

In Jacob v. Korean Air Lines Co., Ltd., 606 Fed. Appx. 478 (11th Cir. 2015), the Eleventh Circuit upheld a grant of summary judgment against a plaintiff who sued an airline under the Montreal Convention for a number of medical issues he alleged resulted from an "accident" on the flight, including the worsening of his diabetes and the swelling of his legs. Id. While the plaintiff in that case submitted his medical records, he did not submit any expert testimony specifically linking his injury to the actions of the airline. Id. In Jacobs, the Eleventh Circuit, and the underlying Southern District Court of Florida, did not address whether plaintiff's claims were "accidents" as defined in the Montreal Convention. Id. Instead, they held that, even if the cause of plaintiff's injuries were "accidents", without reference to expert medical testimony showing causation as to plaintiff's injury, summary judgment was appropriate for the defendant. Id.

Here, plaintiff alleges that as a result of food given to him on his flight, he experienced "food poisoning," and here, plaintiff's claim runs into the same problem that the plaintiff did in Jacob v. Korean Air Lines Co., Ltd. Jacob, 606 Fed. Appx. at 478. As in Jacob, although the plaintiff alleges that the airline food led to his illness, he has presented no evidence in support of this causation.

Accordingly, just as in <u>Jacob</u>, plaintiff has failed to present expert medical evidence establishing that defendant's actions were the cause of his injury. Just as in <u>Jacob</u>, this Court must grant summary judgment against plaintiff.

In fact, plaintiff has presented no evidence, expert or otherwise, linking defendant's action of serving food to the illness plaintiff alleges he later suffered. Plaintiff has established only a temporal relationship between his eating of the food and his alleged later illness. Proving a temporal relationship between eating food and "the onset of symptoms does not establish a causal relationship." <u>McClain v. Metabolife Intern., Inc.</u>, 401 F.3d 1233, 1243 (11th Cir. 2005).

As plaintiff has failed to present <u>any</u> evidence of causation between the defendant's serving food and plaintiff's alleged injury, or that plaintiff experienced an "accident," this Court must dismiss his claims as to those injuries and grant summary judgment.

> ### ii.    *Plaintiff's claim of business loss was not caused by an "accident" under the Montreal Convention and is not*

Plaintiff brings a second injury claim under his Count I Montreal Claim, wherein he alleges that he suffered injury as a result of the delay to his trip to Miami and loss of a business project. (Docket Entry No. 1, ¶ 10). Specifically, plaintiff alleges that Delta employees "failed to communicate clearly where an ambulance could be accessed, using industry jargon in reference to emergency

assistance options and generally treating plaintiff's condition inappropriately skeptically," resulting in plaintiff's not arriving in Miami on time for his business project and his subsequent alleged business loss of $40,000. (Docket Entry No. 1, ¶ 10). Plaintiff has brought his claim of business loss under Article 17(1) of the Montreal Convention and plaintiff's claim fails to meet two of the three necessary elements for such a claim. (Docket Entry No. 1, ¶ 13).

First, the causation of plaintiff's business loss is not an "accident" under the Montreal Convention. To the extent that plaintiff argues that plaintiff's alleged food poisoning was an accident causing the business loss, as discussed above plaintiff has failed to present expert medical evidence or any other causation evidence that the food plaintiff ingested on the flight was the cause of his illness. See discussion supra, Part B.i. Without establishing this causation, the causal link between defendant serving food to plaintiff and plaintiff missing his connecting flight to Miami is broken.

Plaintiff also lays the cause of his delay and business loss on the alleged failure of the flight crew to properly communicate that an ambulance was available to him. (Docket Entry No. 1, ¶ 10). The actions of the flight crew in providing assistance and plaintiff's failure to understand, resulting in his mistaken refusal of assistance, is not an "accident" under the Montreal Convention.  The flight crews

use of the term, "e-unit" rather than some other term more recognizable to the plaintiff was not an unusual or unexpected external event. (Doe Depo. p. 114, l. 14). Rather, plaintiff's misunderstanding and refusal of medical transport was his internal reaction to the expected and usual operation of the flight crew in offering assistance. (Doe Depo. p. 115, l. 1). <u>See</u> <u>Singh v. Caribbean Airlines Ltd.</u>, 49 F.Supp.3d 1108, 1117 (S.D. Fla. September 18, 2014) ("to be clear, imperfect responses to medical emergencies do not constitute an "accident," if the crew's response is not "unusual" or "unexpected").

Second, and most fatal to plaintiff's claim, plaintiff's business loss is, on its own terms, not a bodily injury or death as required by Article 17(1) of the Montreal Convention. Accordingly, by the plain language of Article 17(1), no matter whether the cause was an "accident," this Court cannot grant relief for the injury plaintiff requests under Article 17(1) of the convention.

### iii.   *Plaintiff's claim of lost medication fails to establish causation sufficient to survive summary judgment.*

Plaintiff alleges a third injury under his Montreal Convention Article 17(1) claim, alleging that plaintiff did not receive his luggage in excess of two weeks, and that after that plaintiff did receive his luggage, certain anti-retroviral

medication was missing.  (Docket Entry No. 1, ¶ 11).[2] Plaintiff's alleged injury related to his medication can be split into two claims: (1) a claim to recover the monetary amount of the allegedly lost medication, and (2) a claim to recover for alleged personal injuries caused by the alleged lost medication.

### a.    *Monetary value of lost medication*

First, plaintiff has failed to identify an "accident" which caused plaintiff's alleged injury. Delay in baggage, alone, is not an "accident" under the Montreal Convention. While Courts have found baggage delays to be "accidents," they have only done so when the delay was accompanied by some other incident. See Prescod v. AMR, Inc., 383 F.3d 861, 868 (9th Cir. 2004)("While baggage removal and delivery delays are routine in air travel, the atypical aspect of this case was the promises made by defendants' employees that the bag would not be taken from [the plaintiff] and would not be delayed.").   In Prescod, the Court found that the baggage delay was an accident, only because the plaintiff had not intended to check their baggage and her baggage was instead taken by the flight crew to be checked. Here, plaintiff's plan was always to check his baggage, and the ensuing delay was not an "unexpected and unusual" occurrence as defined by the Montreal Convention. (Doe Depo. p. 89, l. 18).   That plaintiff was unable to obtain his

---

[2] Defendant notes that while plaintiff has alleged he did not receive his baggage for over two weeks, plaintiff

baggage as he was transported from the airport after suffering illness does not serve to make his delay of baggage unusual.  See Singh, 49 F.Supp.3d at 1117 ("to be clear, imperfect responses to medical emergencies do not constitute an "accident," if the crew's response is not "unusual" or "unexpected").  Defendant's response to plaintiff's medical emergency, escorting him by wheelchair swiftly, bypassing the baggage claim, to be taken to medical care is neither unusual, nor unexpected. (Doe Depo. p.  117, l. 1- l. 16); See id.

Second and finally, the first part of plaintiff's injury here falls to the same fatal flaw as his claim for business loss.  The claimed money value loss of $25,000 of medicine is not bodily injury or death as required by Article 17(1). This Court cannot grant this relief under Article 17(1), as plaintiff asks.

### b.    *Personal injury related to lost medication*

Count I of plaintiff's complaint also alleges plaintiff suffered injury related to "medical expenses, physical pain, emotional suffering, disability, and loss of a normal life." (Docket Entry No. 1, ¶ 12).  While plaintiff's pleadings do not make clear which portion of these injuries are a result of the illness, and which portion are a result of the loss of anti-retroviral medication, plaintiff's response to discovery includes regression of his HIV as a portion of his injury caused by loss

---

testified that his bags were returned to him two days after arriving in Atlanta, Georgia. (Doe depo. p. 123, l7).

of his anti-retroviral medication.    (Plaintiff's response to Defendant's First Interrogatories, Interrogatory Response No. 9).

First, as discussed above, plaintiff has failed to establish an "accident" under the Montreal Convention which caused this injury. See discussion supra, Part B.iii.b.

Second, Plaintiff has failed to present any evidence in support of causation of the alleged injury and has failed to establish even the existence of the injury itself. While plaintiff's discovery responses include regression as an injury, plaintiff testified in his deposition that his HIV was currently stable and his viral loads were undetectable.  (Doe Depo. p. 177 l. 23 – l. 25).  Plaintiff has failed to present any evidence showing that he has suffered physical injury as a result of the alleged lost medication.  As plaintiff has failed to show any evidence showing physical injury, he is unable to recover for any alleged emotional suffering as well. Ehrlich, 360 F.3d at 400.

Where plaintiff has failed to make a sufficient showing on an essential element of his case, defendant is entitled to summary judgment. Celotex, 477 U.S. at 322. In light of the complete absence of evidence supporting that plaintiff actually suffered bodily injury as a result of his alleged missing medication, this

Court must grant summary judgment against plaintiff's claim for bodily injury.

<u>Rice-Lamar</u>, 232 F.3d at 840.

As none of the injuries plaintiff brings in Count I of his complaint can be granted, this Court must dismiss Count I of plaintiff's complaint.

## IV.    CONCLUSION

WHEREFORE, defendant Delta Air Lines, Inc. respectfully requests that this Court GRANT its motion for summary judgment and dismiss Counts I, II, and III of plaintiff's complaint.

Respectfully submitted,

STRAWINSKI & STOUT, P.C.

By:   */s/ Nicole Wolfe Stout*
       NICOLE WOLFE STOUT
       Georgia Bar No. 773370
       Attorney for Defendant

3340 Peachtree Road, N.E.
Suite 1445, Tower Place 100
Atlanta, Georgia 30326
Phone:  (404) 264-9955
Fax: (404) 264-1450

This is to certify that the foregoing pleading was prepared using Times New Roman 14 point font in accordance with Local Rule 5.1(C).

By:  */s/ Nicole Wolfe Stout*
       Nicole Wolfe Stout

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, by electronic filing and service upon:

> John T. Dixon, Esq.
> Norris Legal Atlanta Law Group, LLC
> 1100 Peachtree Street, NE
> Suite 690
> Atlanta, Georgia 30309

This 28th day of May, 2021.

> By:   */s/ Nicole Wolfe Stout*
>         Nicole Wolfe Stout